```
              IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```

|  |  |  |
|---|---|---|
| **KENITHA L. FERGUSON HARRINGTON,** | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 23-cv-02790-SHM-cgc |
| **DEMARIO D. WHITE and J.S. MANAGEMENT, INC.,** | ) ) ) ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Before the Court is Plaintiff Kenitha L. Ferguson Harrington's May 6, 2024 Motion for Default Judgment ("Motion"). (ECF No. 15.) For the following reasons, the Motion is DENIED as to Defendant J.S. Management, Inc. and GRANTED as to Defendant Demario D. White. Plaintiff's claim for punitive damages is DENIED. Plaintiff is directed to provide the Court with a sworn affidavit supporting the damages she seeks.

**I.   Background**

Proceeding pro se, Plaintiff filed a complaint against Defendants on December 18, 2023, alleging the following. (ECF No. 1.) Defendant White (a.k.a. "Moneybagg Yo") is a rapper managed by Defendant J.S. Management. (Id.) On June 16, 2023, Plaintiff and Defendant White entered into a written contract. (Id.)

Defendant White agreed to perform two or three of his songs in the VIP section of Truth Lounge[1] in Columbus, Ohio, on August 24, 2023, at midnight.  (Id. at 4.)  The night of the scheduled performance Defendant was pulled over by the local police for "suspicious activity," and did not arrive at Truth Lounge until after the club was scheduled to close at two in the morning.  (Id.)

Plaintiff seeks $105,000 in damages.  (Id.)  She seeks $90,000, the amount she paid Defendant White for his performance, and $15,000 as compensation for refunding patrons who were "upset" by the delay.  (Id.)  Plaintiff also seeks punitive damages because Defendants' actions were "beyond negligent."  (Id.)

As Exhibit 1, Plaintiff attaches the contract.  (ECF No. 1-1.)  As Exhibit 2, Plaintiff attaches a police report detailing Defendant White's encounter with the City of Reynoldsburg Police in the early morning of August 25, 2023.  (ECF No. 1-2.)  As Exhibit 3, Plaintiff attaches a screenshot of a social media advertisement for Defendant White's performance at Truth Lounge.  (ECF No. 1-3.)  As Exhibits 4 and 5, Plaintiff attaches screenshots of social media posts about Defendant White's failure to perform as scheduled.  (ECF Nos. 1-4, 1-5.)

Plaintiff submits proof of service on Defendant White on February 21, 2024 and proof of service on Defendant J.S. Management

---

[1] It is not clear whether Plaintiff is the owner of Truth Lounge or works for the Lounge in some other capacity.

2

on February 23, 2024.  (ECF Nos. 7, 8.)  Neither party has entered an appearance.

On March 11, 2024, Plaintiff filed a Request for Entry of Default against Defendant White.  (ECF No. 10.)  On March 14, 2024, the Clerk of Court entered default against Defendant White only. (ECF No. 11.)  On April 18, 2024, Plaintiff filed a second Motion for Entry of Default, this time against Defendant J.S. Management. (ECF No. 14.)  On April 22, 2024, the Clerk of Court entered default against Defendant J.S. Management.  (ECF No. 15.) Plaintiff now moves for default judgment, seeking $105,000, punitive damages, and the costs of litigation.  (ECF No. 16.)

## II.  Jurisdiction and Choice of Law

This Court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff is a citizen of Ohio.  (ECF No. 1 at 1, 3.)  Defendants are citizens of Tennessee.  (Id. at 2-3.)

Plaintiff seeks $105,000 in damages.  (Id. at 7); (ECF No. 1-1) (contract between Plaintiff and Defendant White, listing the performance fee as $90,000).  Because the parties are citizens of different states and the damages alleged exceed $75,000, the Court has diversity jurisdiction. Rosen v. Chrysler Corp., 205 F.3d 918, 920-21 (6th Cir. 2000) ("In diversity cases, the general rule is that the amount claimed by a plaintiff in his complaint determines the amount in controversy, unless it appears to a legal

3

certainty that the claim is for less than the jurisdictional amount.")

State substantive law applies to state law claims brought in federal court. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Where there is no dispute that a certain state's substantive law applies, the Court will not conduct a choice of law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). Plaintiff filed the instant suit in Tennessee court, alleging common law breach of contract claims under Tennessee law. (ECF No. 1 at 4.) Plaintiff has attached the contract between herself and Defendant White, in which the parties agree that any disputes will be resolved under Tennessee law. (ECF No. 1-1 at 3.) The Court will apply Tennessee substantive law.

### III. Standard of Review

Rule 55 creates a two-step process for obtaining a default judgment. First, the Clerk of Court enters a default if the defendant has failed to answer or defend the complaint. Fed. Civ. P. 55(a). Then, the plaintiff may move the court for a default judgment. Fed. R. Civ. P. 55(b). The court enters judgment in favor of the plaintiff if, accepting the plaintiff's allegations as true, the complaint supports a finding of liability.[2] Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006).

---

[2] Courts may also consider any exhibits attached to the Complaint. United States v. Labarge, No. 8:15-CV-01330, 2016 WL

4

Under Tennessee law, a breach-of-contract claim has three elements: (1) the existence of a valid and enforceable contract; (2) a deficiency in performance amounting to a breach; and (3) damages. Fed. Ins. Co. v. Winters, 354 S.W.3d 287, 291 (Tenn. 2011); In re Piercy, 21 F.4th 909, 922 (6th Cir. 2021).

**IV. Analysis**

    **A.  Plaintiff Had a Valid Contract with Defendant White**

Plaintiff has established the existence of a valid contract between herself and Defendant White, but not between herself and Defendant J.S. Management. Plaintiff has attached a document labelled "Artist Engagement Contract" in which Defendant White agrees to perform two to three songs at Truth Lounge on August 24, 2023 in exchange for $90,000. (ECF No. 1-1.) Plaintiff and Defendant White signed the contract's final page. (Id. at 3.) Plaintiff has established the first element of a breach-of-contract claim under Tennessee law as to Defendant White. Winters, 354 S.W.3d at 291.

Defendant J.S. Management is not listed as one of the parties, and no representative from the company signed the contract. (See generally id.) The contract contains a provision in which Plaintiff and Defendant White "acknowledge that JSM . . . is not

---

3926412, at *2 (N.D.N.Y., Jul. 18, 2016); United States v. Lang, No. 3:15-cv-994-J-32JBT, 2016 WL 11581066, at *3 (M.D. Fla. June 29, 2016.)

5

a party to this agreement" and that the "agreement is solely between" Plaintiff and Defendant White. (Id. at 1.) The parties "each agree not to sue JSM" over any dispute arising from the contract. (Id.) Plaintiff's Motion is DENIED as to Defendant J.S. Management because Plaintiff has not shown the existence of a valid and enforceable contract with J.S. Management. Winters, 354 S.W.3d at 291.

### B. Defendant White Breached His Contract with Plaintiff

Plaintiff has established that Defendant White breached their contract. Defendant White agreed to perform two to three "unadvertised songs" in the VIP section of Truth Lounge on August 24, 2023. (ECF No. 1-1 at 1.) Accepting Plaintiff's allegations as true, Defendant did not arrive at Truth Lounge until two in the morning, at which point the Lounge had closed. (ECF No. 1 at 2); Ford Motor Co., 441 F. Supp. 2d at 848.

The contract contains a "non-performance" clause stipulating that Defendant White's obligation to perform would be waived in the event of sickness, accident, or impossibility. (ECF No. 1-1 at 2.) As examples of events that would render performance impossible, Defendant White lists "act[s] of God," "war conditions or emergencies," and "epidemic[s]," as well as "any cause beyond [his] control." (Id.) The contract does not specify whether being questioned by law enforcement would waive Defendant White's

6

obligation to perform. (Id.) The words "impossibility" and "cause beyond [Defendant's] control" must be construed using the "plain and ordinary meaning of the written words" in the contract, as well as "appropriate rules of construction." Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc., 395 S.W.3d 653, 659 (Tenn. 2013).

The Court interprets the contract consistently with Tennessee common law. "A party is not relieved of liability for his nonperformance of a contract based upon the defense of impossibility of performance where the impossibility is caused by the party's own conduct or where the impossibility is caused by developments which the party could have prevented or avoided." Jenkins Subway, Inc. v. Jones, 990 S.W.2d 714, 724-25 (Court App. Tenn. 1998); United Brake Sys., Inc. v. Am. Env't Prot., Inc., 963 S.W.2d 749, 756 (Court App. Tenn. 1997).

According to the police report, at 12:51 a.m. police responded to a report of suspicious activity in a Walmart parking lot. (ECF No. 1-2 at 3.) Police arrived to see a Cadillac leave the lot and make an improper turn. (Id.) Police initiated a traffic stop and "immediately detected a strong odor of marijuana coming from the car." (Id.) Defendant White, who was seated in the back seat, told police that he had smoked marijuana earlier. (Id.) On searching the car, the police found "commercial style" bags of marijuana. (Id.) The bags had QR codes with Defendant White's

7

stage name, Moneybaggyo, on them. (Id.) The officers confiscated the marijuana and let the parties go. (Id.)

Defendant White could have prevented these developments. Proof the Court can consider establishes that he willfully smoked marijuana in a publicly-parked car and willfully possessed bags of marijuana labelled with his stage name. He did so at one in the morning, roughly an hour before the venue was supposed to close. By engaging in this behavior, Defendant White bore the risk that he would be stopped and questioned and miss his performance. Defendant White cannot avail himself of the defense of impossibility. Jenkins, 990 S.W.2d at 724-25; United Brake Systems, 963 S.W.2d at 756.

The contract also contains a clause in which the parties agree that any claim of breach will be settled by arbitration. (ECF No. 1-1 at 3.) Defendant White waived enforcement of the arbitration clause by failing to timely enter an appearance in this action. Gen. Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat, 289 F.3d 434, 438 (6th Cir. 2002) (affirming denial of motion to compel arbitration because party waived enforcement of the arbitration clause by failing to file the motion until after default judgment had been entered). Plaintiff has established the second element of a breach-of-contract claim under Tennessee law as to Defendant White.

**C. Plaintiff's Claim for Punitive Damages is Denied**

Plaintiff seeks punitive damages because Defendant's actions were "beyond negligent." (ECF No. 1 at 4.) Although punitive damages may be awarded as part of a default judgment, Plaintiff has not shown entitlement to punitive damages here. Scrivo v. Kendrick-Hall, No. 2:18-cv-13702, 2020 WL 6335991, at *4 (E.D. Mich. Oct. 29, 2020).

"To prevail on a claim for punitive damages, a plaintiff must show, by clear and convincing evidence, that a defendant acted intentionally, fraudulently, maliciously, or recklessly." Sanford v. Waugh & Co., Inc., 328 S.W.3d 836, 848 (Tenn. 2010). Because punitive damages "are intended to punish a defendant, to deter him from committing acts of a similar nature, and to make a public example of him," they are only available in cases involving "the most egregious of wrongs." Id. at 849 (internal citations, quotation marks omitted); see e.g., McLemore ex rel. McLemore v. Elizabethton Med. Invs., Ltd. P'ship, 389 S.W.3d 764, 771-72 (Tenn. Ct. App. 2012) (upholding award of punitive damages where medical malpractice at a nursing home led to a patient's death); Hatfield v. Allenbrooke Nursing and Rehab. Ctr., LLC, No. W2017-00957-COA-R3-CV, 2018 WL 3740565, at *52-53 (Ct. App. Tenn. Aug. 6, 2018) (upholding punitive damages award where nursing home patients experienced "outrageous lack of care"); Scutt v. McLean, App. No. 86-193-II, 1987 WL 12047, at *2 (Ct. App. Tenn. June 10,

9

1987) (upholding a punitive damages award where defendant exhibited "willful and reckless disregard" for public safety by driving while intoxicated). "As a general matter," punitive damages are not available for breach-of-contract claims. Rogers v. Louisville Land Co., 367 S.W.3d 196, 211 n.14 (Tenn. 2012); Riad v. Erie Ins. Exch., 436 S.W.3d 256, 276 (2013); Dog House Invs., LLC v. Teal Prop., Inc., 448 S.W.3D 905, 916 (Ct. App. Tenn. 2014).

By using illegal drugs in a public place when he was late for his scheduled performance, Defendant knowingly ignored the risk that he would be detained by law enforcement and miss the performance entirely. Duran v. Hyundai Motor Am., Inc., 271 S.W.3d 178, 206-07 (Court App. Tenn. 2018) (punitive damages warranted when defendants were "aware of, but consciously disregarded" a "substantial and unjustifiable" risk). Defendant has shown no acceptance of responsibility, even failing to enter an appearance in the instant action.

However, punitive damages are awarded only in the most egregious contract cases. This case is not like cases where courts have granted punitive damages. Defendant's actions did not endanger public health or safety. Cf. Goff v. Elmo Greer & Sons Const. Co., Inc., 297 S.W.3d 175, 188 (2009) (upholding award of punitive damages when defendant buried waste on plaintiff's property in violation of state environmental regulations). He did

10

not engage in repeated dishonesty or deceit. Id. at 188-93 (opining that defendant repeatedly lied to plaintiff about cleaning up the waste); Dog House Invs., LLC, 448 S.W.3d at 916 (upholding award of punitive damages against landlord who fraudulently withheld insurance payments from lessor, a small business on the point of bankruptcy); Korshoff v. Wesley Fin. Grp., LLC, No. M2022-00630-COA-R3-CV, 2024 WL 445849, 11-17 (Ct. App. Tenn. Feb. 6, 2024) (upholding jury award of punitive damages where employer breached contract by terminating plaintiff and covered up conduct by inventing pretextual reason). Plaintiff's claim for punitive damages is DENIED.

### D.  Proof of Damages

Plaintiff seeks to recover $90,000 for the fee she paid Defendant for his performance; $15,000 for the cost of reimbursing disappointed patrons; and reimbursement for the costs of litigation. (ECF No. 1 at 4.) Although the allegations in Plaintiff's complaint are accepted as true for purposes of determining Defendants' liability, facts about damages are not taken as true. Ford Motor Co., 441 F. Supp. 2d at 848; Penn. Higher Education Assistance Agency v. Meekins, No. 1:10-cv-1082-JDB-egb, 2010 WL 4338640 (W.D. Tenn. Sept. 28, 2010). Plaintiff must provide independent proof of damages.

Plaintiff has attached a copy of her contract with Defendant White, which required her to pay him $90,000 no later than two

11

days before his scheduled performance. (ECF No. 1-1.) She has not provided proof of payment or proof of the amount she reimbursed customers for the price of their tickets. Cf. Penn. Higher Educ. Assistance Agency, 2010 WL 4338640 at *1 (finding that no hearing was necessary because damages were a sum certain agreed upon by contract). She has provided no proof of the costs of litigation. Plaintiff is directed to provide a sworn affidavit setting forth facts that support the damages she seeks.

**V.   Conclusion**

Plaintiff's Motion for Default Judgment is DENIED as to Defendant J.S. Management, Inc. and GRANTED as to Defendant Demarius D. White. Plaintiff's claim for punitive damages is DENIED. Plaintiff is DIRECTED to provide a sworn affidavit supporting the damages she seeks within twenty-eight (28) days of the filing of this Order.

SO ORDERED this 30th day of August, 2024.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

12